John E. Casperson, ABA #7910076
HOLMES WEDDLE & BARCOTT, P.C.
jcasperson@hwb-law.com
Attorneys for Plaintiff HDR Marine LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HDR MARINE LLC, | IN ADMIRALTY |
| Plaintiff, | |
| v. | |
| THE UNITED STATES OF AMERICA, U.S. DEPARTMENT OF COMMERCE, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, | Case No. |
| Defendant. | |

## COMPLAINT

COME NOW Plaintiff HDR Marine LLC, by and through its undersigned counsel of record, and hereby alleges as follows:

### I. Jurisdiction and Venue

1. This is an action arising from maritime contracts. The Court has jurisdiction over this matter pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 30901-30917.

2. Venue lies with this Court pursuant to 28 U.S.C. § 1391(b)(2).

### II. Parties

1. Plaintiff HDR Marine LLC is a limited liability company organized

under the laws of the State of Alaska.

2. Defendant The United States of America is a governmental entity, an agent and subsidiary of which is the scientific and regulatory agency the United States Department of Commerce, National Oceanic and Atmospheric Administration ("NOAA"). The United States of America and NOAA are collectively referred to herein as the "Government."

## III. Facts

1. Plaintiff HDR Marine LLC ("HDR Marine") is a woman-owned small business concern providing marine charter services in the State of Alaska.

2. In February 2021, HDR Marine submitted a bid for Contract No. 1305M321CNRMA0009, pursuant to small-business set aside solicitation number 1305M321QNRMA0011. HDR Marine was issued a letter of intent to award this contract on April 9, 2021.

3. The parties subsequently executed Contract No. 1305M321CNRMA0009 (the "Contract") on April 13, 2021. A true and correct copy of the Contract is attached hereto as **Exhibit A**. The Contract was accompanied by a Performance Work Statement, attached hereto as **Exhibit B**.

4. The purpose of the Contract was to provide a Bering and Chukchi Sea Vessel Charter for scientists employed by NOAA, with a period of performance from August 1, 2021 to October 10, 2021. Ex. B at 3. To facilitate the Contract, NOAA chartered the vessel Discovery from a subcontractor.

5. The Contract was a Firm-Fixed-Price contract, with an initial price of

$988,248. Ex. A at 3.

6. The Contract was to provide a vessel work platform capable of supporting NOAA's scientific objective. It included a minimum of 25 base charter days, plus five optional charter days, loading and unloading days, and reimbursement for fuel consumed. The scientific party was scheduled to load in Seward and disembark in Kodiak, after loading NOAA's scientific equipment in Seattle and transitioning with it to Alaska.

7. Prior to the August 1, 2021 performance date, NOAA demanded numerous constructive changes to the contract, including but not limited to increasing berthing requirements and number of passengers; revisions to deck layout planning; implementation of heightened policies and procedures relating to COVID-19; and required attendance at weekly and bi-weekly meetings with Government personnel. These demands by NOAA increased costs to HDR Marine by more than $340,000.

8. NOAA also engaged in conduct which delayed performance under the Contract, including but not limited to shopping for its own vendor to provide accommodations for scientists on the vessel, and demanding access to the vessel in a manner that required HDR Marine to actively supervise government personnel.

9. On August 22, 2021, the Discovery was loaded with NOAA's equipment in Seattle, Washington, over a two-day period, and departed for Alaska.

10. On September 1, 2021, the vessel arrived in Seward, Alaska, and the charter began.

HOLMES WEDDLE & BARCOTT, PC
3101 WESTERN AVENUE, SUITE 500
SEATTLE, WA 981121-3071
TELEPHONE (206) 292-8008
FAX (206) 340-0289

11. Without HDR Marine's knowledge, NOAA began communicating during the loading process with HDR Marine's subcontractors, and those employed by the shipyard. Through these communications, NOAA facilitated modifying the Discovery by adding an additional science van not required by the contract, additional winches and stairs, transformers, snatch blocks, and wi-fi equipment. The installation of these items was neither approved by HDR Marine nor required by the United States Coast Guard for vessel safety. These unapproved modifications resulted in additional expenses to HDR Marine.

12. The Government also demanded the provision of additional equipment, supplies, and work not disclosed in the Contract or specifications prior to performance, including providing COVID-19 tests, procuring specialized food items, transportation of materials requested by the science party that they forgot to bring, and the transport and heated storage of NOAA's gear.

13. After the vessel was finally equipped on September 5, 2021, the NOAA scientific party decided to stay another night in Seward, resulting in further increased expenses to HDR Marine for shuttle costs and additional berthing for the Discovery.

14. The vessel departed Seward on September 6, 2021. Only two days later, the chief scientist of the NOAA science party alerted the vessel captain that "1-2 people have opted to depart the vessel in Dutch Harbor."

15. On September 10, 2021, the vessel arrived in Dutch Harbor. Three persons from the science party departed the vessel. Upon information and belief, it

is believed that these persons were ill with COVID-19, which was not reported to HDR Marine. While in Dutch Harbor, the HDR Marine staff retrieved a back-up heater fan motor for the extra berthing unit added at NOAA's request, then the vessel departed, dropped and retied a NOAA buoy, and proceeded toward Nome. NOAA has denied all payment for September 10, 2021.

16. On September 13, 2021, a COVID-19 outbreak was detected on the vessel. NOAA has denied all payment for September 13, 2021.

17. Notably, neither the State of Alaska, the U.S. Coast Guard, nor any government agency ever restricted the vessel from operating with COVID-19, as the vessel was considered "critical infrastructure." However, the vessel returned to Dutch Harbor in strict compliance with NOAA's COVID-19 policy. At that point HDR Marine remained at port awaiting further direction from NOAA per contractual demands, offered to re-staff the vessel with an available stand-by crew, and communicated that the vessel was able to proceed immediately. Despite these efforts, NOAA cut off communication with HDR Marine and refused to advise as to the status of the Contract.

18. On September 24, 2021, NOAA issued a Show Cause Notice to HDR Marine, a true and correct copy of which is attached hereto as **Exhibit C**. The Show Cause Notice falsely asserted: that the vessel's sailing days had concluded on September 9, 2021; that the Captain had disregarded applicable COVID-19 protocols; and that the U.S. Coast Guard had placed the ship under quarantine. Ex. C at 1. In fact, none of these statements were true. The Show Cause Notice directed

HOLMES WEDDLE & BARCOTT, PC
3101 WESTERN AVENUE, SUITE 500
SEATTLE, WA 981121-3071
TELEPHONE (206) 292-8008
FAX (206) 340-0289

HDR Marine to prepare a proposal for demobilization of NOAA's equipment in either Seattle, Washington (its proposed destination), Kodiak or Dutch Harbor, Alaska. Despite NOAA's assertion to the contrary, HDR Marine remained fit, willing, and able to continue performing its obligations under the Contract.

19. While HDR Marine attempted to correct NOAA's misunderstandings through a September 27, 2021 response to the Show Cause Notice (attached hereto as **Exhibit D**), and provided a detailed proposal for demobilization of NOAA's equipment in Seattle, confusion as to the status of the Contract persisted. On September 30, 2021, NOAA issued a Contract Direction Notice (attached hereto as **Exhibit E**) stating that "The contractual obligations of HDR remain in full force and effect for the demobilization of Government equipment remaining on Discovery. The Government requests demobilization at Dutch Harbor Offshore Systems Inc. Dock beginning on 3 October 2021." Ex. E at 1. In other words, NOAA demanded that HDR Marine continue performing its obligations under the Contract, and expressly disallowed HDR Marine from undertaking any actions during the performance period to mitigate its damages.

20. Consistent with this government directive, on October 3, 2021, NOAA's equipment was offloaded in Dutch Harbor.

21. HDR Marine received no further communication from NOAA regarding the status of the Contract until October 28, 2021. On that date, NOAA issued a Notification of Termination for Government Convenience pursuant to FAR 52.212-4(l). A true and correct copy of the Termination for Government

HOLMES WEDDLE & BARCOTT, PC
3101 WESTERN AVENUE, SUITE 500
SEATTLE, WA 98121-3071
TELEPHONE (206) 292-8008
FAX (206) 340-0289

Convenience is attached hereto as **Exhibit F.**

22. Without recognizing the impropriety of the Government's retroactive termination for convenience, on December 14, 2021, HDR Marine submitted an initial settlement proposal pursuant to FAR 52.212-4(l) requesting $977,878.20 as compensation for its full performance of the Contract, as well as expenses attributable to NOAA's improper modifications to the Contract.

23. The Contracting Officer (hereinafter "CO") erroneously informed HDR Marine that the proposal was submitted incorrectly, and required HDR Marine to re-submit the proposal using an alternate reimbursement method. By this time, HDR Marine was experiencing financial distress because it had not yet been paid by NOAA for any portion of the Contract price, a fact of which it informed the CO. On December 31, 2021, HDR Marine provided the revised proposal, again notifying NOAA that non-payment was resulting in hardship.

24. On January 8, 2022, HDR Marine notified NOAA that it is unable to bid on other contracts due to hardship from the ongoing non-payment. Three days later, HDR Marine requested a timeline for resolution of the dispute, to which NOAA responded that the matter was under review.

25. On February 3, 2022, NOAA demanded an audit of HDR Marine's financial records, in contravention of the plain language of FAR 52.212-4(l).

26. Finally, in March 2022, NOAA paid HDR Marine $657,388.03, denying many of HDR Marine's reasonable and supported costs.

27. On May 5, 2022, HDR Marine provided the CO with a Final Settlement

Proposal, again in accordance with FAR 52.212-4. The proposal requested approximately $1,482,793, less a credit for the partial payment previously tendered.

28. On September 9, 2022, the CO issued a final determination letter (attached hereto as **Exhibit G**) regarding HDR Marine's settlement proposal, allowing HDR Marine to recoup an additional $198,477.95 in costs, but disallowing approximately $518,000 of that sought by the Final Settlement Proposal.

29. While NOAA was aware of HDR Marine's ongoing financial hardship, it did nothing to facilitate settlement of HDR Marine's contractual entitlement in an expeditious manner, increasing HDR Marine's damages. Further, NOAA failed to compensate HDR for those expenses attributable to its own misconduct and demands of performance in excess of Contract requirements.

30. In the aftermath of the final determination, NOAA's pattern of bad faith and injurious conduct toward HDR Marine continued. On January 11, 2023, the CO issued an adverse Contractor Performance Assessment Report ("CPAR") for HDR Marine's performance under the Contract, a copy of which is attached hereto as **Exhibit H**.

31. Although the government's termination of the Contract for convenience, rather than for cause, constitutes an admission that HDR Marine satisfied its contractual obligations to NOAA, the CPAR includes numerous false assertions of deficient and sub-par performance by HDR Marine, and concludes that HDR Marine's performance under the Contract was "unsatisfactory" in both quality and scheduling. CPARs are publicly available, and impact contractors' ability to

successfully bid on government contracts.

32. Although HDR Marine timely submitted comments disputing the content of the CPAR, to date, they have not been finalized by the Reviewing Official.

33. HDR Marine submitted a certified claim to the Government dated March 5, 2024, claiming entitlement to $583,941.05 under the Contract for which it had not yet been compensated.

34. The Government responded to HDR Marine's March 5, 2024 claim on July 3, 2024 (attached hereto as **Exhibit I**, the "2024 Denial"), using a blended approach to calculate amounts owed and to determine that HDR Marine was entitled to $846,189.43, but had already been paid $855,865.98, thus denying any additional payment to HDR Marine on the Contract.

35. The 2024 Denial includes numerous errors of law and fact, including but not limited to the erroneous assumption that HDR Marine's recovery is limited to the Contract's original price, and that HDR Marine was "off hire" for not only the days it was ordered to dock by NOAA but also much of the time it was underway at sea. In fact, the vessel was "on hire" from the day it arrived in Seattle, WA to load NOAA's equipment on August 22, 2021 until NOAA ceased occupying the vessel with its equipment on October 3, 2021. Although the Government appropriately acknowledged HDR Marine's right to equitable adjustments to the originally contracted amounts due to various changes NOAA requested for the charter, such adjustment was only applied to a portion of the time of HDR Marine's

performance while the vessel was on charter. The 2024 Denial also erroneously denied some of HDR's administrative costs in presenting its claim to NOAA, and failed to compensate HDR for its damages attributable to NOAA's delays in resolving the claim, including but not limited to its inability to bid on other work, and its need to liquidate a vessel to avoid defaulting on other financial obligations.

### IV. Causes of Action

### COUNT I: BREACH OF CONTRACT

1. All of the allegations set forth above are incorporated to the same effect as if fully set forth.

2. HDR Marine and NOAA entered into a binding and enforceable contract, which required NOAA to, among other terms, pay for the services provided by HDR Marine consistent with the terms thereof.

3. HDR Marine fully performed the terms of the Contract by providing NOAA with a chartered vessel for the period required under the Contract, and by providing NOAA with all other benefits and consideration required under such Contract.

4. NOAA breached the Contract with HDR Marine by not tendering payment due and owing to HDR Marine under the Contract, despite HDR Marine's full performance.

5. Applying the daily rate adjustment agreed between the parties on the Contract and applying such rate ratably to each daily charter rate, HDR Marine is entitled to a daily charter rate of $31,334.70. Applied over a charter period of 41

days (constituting originally chartered days plus charter days from NOAA's constructive change to the contract in requiring additional days before releasing HDR Marine from its performance under the contract through its termination for convenience), plus one charter day at the optional day rate under the Contract of $15,785, HDR Marine is entitled to $1,300,507.70, plus fuel costs in the amount of $72,806.68 and other reasonable charges resulting from termination. Because the government has only paid $855,865.98 to date, HDR Marine is entitled under this calculation to additional costs of $517,448.40 plus other reasonable charges resulting from termination (including internal and other legal expenses incurred in connection with settlement negotiations with the government totaling $66,492.50).

6. Alternatively, HDR Marine is entitled to the contracted amount of $783,367.50 for its full performance under the Contract, plus $31,334.70 per charter day over an additional 16 charter days pursuant to NOAA's constructive change to the contract (requiring additional days before releasing HDR Marine from its performance under the contract through its termination for convenience) totaling an additional $501,355.20, plus fuel costs in the amount of $72,806.68 and other reasonable charges resulting from termination. Because the government has only paid $855,865.98 to date, HDR Marine is entitled under this calculation to additional costs of $501,663.40 plus other reasonable charges resulting from termination (including internal and other legal expenses incurred in connection with settlement negotiations with the government totaling $66,492.50).

7. This breach of contract damaged HDR Marine, including but not

limited to such direct, indirect, general, special and consequential damages, the exact amount to be proven at time of trial.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. That this Court issue an order declaring NOAA breached the Contract with HDR Marine, and is liable to HDR Marine for compensatory damages in an amount of $583,940.90 or such other amount to be proven at trial.

2. That this Court issue an award of pre- and post-judgment interest at the legal rate.

3. That this Court issue an award of costs and full reasonable attorneys' fees as allowed by law and the rules of court.

4. That Plaintiff have such other and further relief as in law and equity as they may be entitled to receive.

DATED this 23 day of April 2025.

>HOLMES WEDDLE & BARCOTT, P.C.
>Attorneys for Plaintiff HDR Marine LLC
>
>\_\_s/ John E. Casperson_____
>John E. Casperson, ABA #7910076

HOLMES WEDDLE & BARCOTT, PC
3101 WESTERN AVENUE, SUITE 500
SEATTLE, WA 981121-3071
TELEPHONE (206) 292-8008
FAX (206) 340-0289